**Jose Luis ZAVALA and Maria Zavala, as next friend of Samuel Zavala, a minor**

**v.**

**Frank CONTRERAS in his capacity as the Director of the Migrant Education Division of the Texas Educational Agency; Texas Educational Agency; Dan Ives, in his capacity as the Superintendent of the Harlingen Independent School District and The Harlingen Independent School District.**

**Civ. A. No. B–83–367.**

United States District Court, S.D. Texas, Brownsville Division.

March 16, 1984.

Crisanta E. Guerra, Brownsville, Tex., for plaintiffs.

Alex Huddleston, Harlingen, Tex., for Dan Ives and The Harlingen Independent School Dist.

Kevin T. O'Hanlon, Asst. Atty. Gen., Austin, Tex., for Frank Contreras and the Texas Educational Agency.

## MEMORANDUM AND ORDER

VELA, District Judge.

The Plaintiffs brought this action on behalf of themselves and all other children of migrant agricultural workers enrolled in the Harlingen School District alleging that the educational programs provided by the state and local Defendants violate their constitutional and statutory rights. Essentially, two claims for relief are asserted. First, that the Defendant's violated Chapter I of the Education Consolidation and Improvement Act of 1981, 20 U.S.C. § 3801 et seq., which incorporates Title I of the Elementary and Secondary Education Act, Programs for Migratory Children, 20 U.S.C. § 2762. Secondly, that the Defendants violated the Equal Protection Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States.

The parties appeared at a hearing before this Court on November 29, 1983 seeking injunctive and declaratory relief. Jurisdiction is predicated upon 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 42 U.S.C. § 1983.

Title I, 20 U.S.C. § 2761 provides federal funding to state educational agencies for the development and establishment of programs of education for children of migratory agricultural workers. Funding is obtained by application from state educational agencies which establish that:

> payments will be used for programs and projects ... which are designed to meet the special educational needs of migratory children of migratory agricultural workers or of migratory fishermen, and to coordinate such programs and projects with similar programs and projects in other states, including the transmittal of pertinent information with respect to school records of such children. 20 U.S.C. § 2762(a)(1).

34 C.F.R. § 204.14 1983 provides that the Secretary of Education will approve a State's migrant education program only if:

> (1) it is designed to meet the special needs of migratory children eligible to be served; and

> (2) holds reasonable promise of making substantial progress toward meeting those needs.

No other guidance is provided by the Act or the regulations regarding the administration of Title I educational programs.

In the case at bar, the Texas Education Agency (TEA), is the state agency responsible for implementation and administration of Texas' migrant education program. Pursuant to its application under Title I, the TEA received approximately $57,000,000.00 in migrant education funds for the 1983–84 school year.

The federal monies obtained by the TEA are then made available to local educational agencies by subgrants through an application procedure which includes a review of the proposed local programs. See 34 C.F.R. § 204.32 and 34 C.F.R. § 204.34. The Harlingen Independent School District (H.I.S.D.) is a political subdivision created under the laws of Texas and functions as a local education agency. Pursuant to its application to the TEA under Title I, the H.I.S.D. received approximately $54,989, to operate its migrant education program for the 1983–84 school year.

The funding obtained from TEA is used by H.I.S.D. to operate a migrant education program entitled "Extended Day" which provides tutorial services to migrant children for one hour each day after regular school hours. Teachers under contract to the school district function as tutors during the twelve week course offered each semester. The purpose of extended day is to allow migrant children to make-up work they have missed because of their late return to school necessitated by the seasonal nature of migratory agricultural work. However, to be eligible for extended day and thereby make-up work and earn fall semester credit necessary to earn a degree, any child, regardless of migrant status, must have enrolled at H.I.S.D. on or before October 17, 1983. This cut-off date, arrived at by dividing the fall semester in half, codifies H.I.S.D. attendance policy and reflects the belief of its board of trustees that a valid educational experience

cannot be realized unless a student attends class 50% of the operation days of the district.

Jose Luis and Samuel Zavala, the Plaintiffs, are the children of migrant agricultural workers and thus are eligible beneficiaries under the federal migrant education program. *See* 34 C.F.R. § 204.3(d)(2). In May, 1983, the Zavala family left their Harlingen, Texas home to engage in the harvest of various agricultural products during the summer months. Upon their return to Harlingen, Jose Luis and Samuel registered to attend school at H.I.S.D. on October 21, 1983. Although they were permitted to enroll and attend classes, they were not allowed to attend extended day or receive credit for any work completed during the fall semester.

As a result, the Plaintiffs complain that the programs offered to migratory students fail to adequately satisfy their "special educational needs". They contend that the cut-off date is arbitrary and punishes migrant children who must travel with their parents to earn a livelihood. The consequences of not allowing migrant children who enroll after October 17, 1983 to make-up work and earn credit, according to the Plaintiffs, is that they fall further behind in their studies while developing a fatalistic attitude toward education. The result, they believe, is a high drop-out rate among migrant children and a perpetuation of their migrant poverty status.

As noted earlier, neither the statute nor the regulations provide any interpretive explanation of the term "special educational needs" much less any administrative guidelines concerning cut-off dates. It appears to the Court that each local school district develops and administers its own migrant education program based upon its evaluation of the local needs of the community. Little, if any, guidance is provided by the TEA.

Extensive research by the Court has revealed one case that interprets 20 U.S.C. § 2762: *Valadez v. Graham*, 474 F.Supp. 149 (M.D.Fla.1979). In *Valadez* the district court held that a migratory educational

program which was essentially vocational in nature as well as an informal make-up work program left to the dedication of teacher and student did not violate Title I, 20 U.S.C. § 2762. Although the propriety of an enrollment cut-off date was not an issue in *Valadez* much of that court's opinion is applicable to the facts of this case. This Court agrees with *Valadez* wherein it was stated that:

> Although there may be a legal entitlement to the special benefits provided by Title I funds, there is not, and cannot be, a statutory assurance that the programs will be the best or the most perfect imaginable. Indeed, it would be a difficult, if not an impossible, task for any court to determine which one of two or more programs most effectively assisted migrant students in their schooling. Of course, the Court does not mean to imply that defendants can do no wrong; only that when a program is developed that arguably addresses the "special educational needs" of migrant students, defendants should not be held in violation of Title I, 20 U.S.C. § 2762 or the regulations promulgated thereunder. *Valadez v. Graham, supra* at 162, 163.

The record reflects that the extended day program itself does meet the special needs of migratory children within the school district. Furthermore, this Court is reluctant to substitute its judgment for that of local officials. Nevertheless, the Court must conclude that the enrollment cut-off date, as it is applied to migrant children, was adopted by the H.I.S.D. in disregard of the special educational needs of such children. The evidence presented at the preliminary injunction hearing revealed that the enrollment cut-off date has no specific application to migrant students, but that it applies to all students. Furthermore, the undisputed composite testimony of H.I.S.D. school officials was that the cut-off date was adopted without consideration of its effect upon the extended day program. In fact, Mr. Douglas Stone, director of the H.I.S.D. migrant education

program, was not consulted by the school board concerning the cut-off date.

In reaching this conclusion, the Court must reiterate that enrollment cut-off dates, per se, do not violate 20 U.S.C. § 2762. Rather, that the employed enrollment cut-off date by H.I.S.D. was adopted without considering the special needs of migrant children.

As an additional cause of action, the Plaintiffs have asserted that the H.I.S.D. migrant education policy violates the Equal Protection Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States. Although this Court is not persuaded that an equal protection violation exists in light of the enrollment cut-off date's application to all children enrolling at H.I.S.D. and not just migrant children, the Court is convinced that sufficient grounds exist to warrant the issuance of a preliminary injunction.

Accordingly, the Court makes the following findings: that a probability of success upon the merits of the statutory violation allegation does exist; that the Plaintiff minor children will suffer irreparable injury should an injunction not be issued; that the Defendants will not be burdened by the injunction based upon the testimony that H.I.S.D.'s migrant student program is currently operating 35 students below its maximum capacity and that a surplus of TEA migrant funds existed after the 1982–83 school year; and that an injunction will best serve the public interest. Therefore, based upon the foregoing, the Court hereby ORDERS that all eligible migrant children who registered after October 17, 1983 at H.I.S.D. be given the opportunity to make-up work and earn credit for the fall semester. The Court expressly rules that the enrollment cut-off date in effect at H.I.S.D. was not adopted in consideration of the special education needs of migrant children. However, the Court finds that cut-off dates per se do not violate 20 U.S.C. § 2762.